Casey, Cb. J.,
delivered tbe opinion of tbe court:
Tbe claimants’ testator was a loyal citizen of tbe District of Columbia, and wbo, during tbe entire period of tbe rebellion, resided in tbe city of Washington. He was before and during tbe war of tbe rebellion tbe owner of a cotton plantation in tbe State of Alabama. He also bad a son residing- there of tbe name of Edward Tbornton Tayloe. B. Ogle Tayloe’s plantation in Alabama was in charge and possession of an overseer, and be continued to manage it during the war without communication with tbe owner in any way. He bad authority to buy necessaries for tbe plantation, and sell such surplus productions or stock as were not needed, except cotton, which was sold by Mr. Tayloe himself or as he directed; and sometimes since the war by Edward Thornton Tayloe, his son.
In 1862, by instructions from Edward Thornton Tayloe, the overseer Morgan sold one hundred, and fifty bales of cotton belonging to B. O. Tayloe to tbe Confederate States cotton agent. He received in payment for it eight per cent, confederate bonds, which Morgan banded over to Edward Thornton Tayloe. It was not shown what the latter did with the bonds. Immediately after the suppression of the rebellion, when the fact of the sale was communicated to B. Ogle Tayloe, he disaffirmed tbe act 'of his agent and disapproved of the transaction. Seventy-two of these one hundred and fifty bales of this cotton so sold was stored at Areola, and remained there at tbe close of the rebellion. And fifty-seven of these bales were seized by the United States and shipped to New York and sold, and the net proceeds, amounting to $9,948 92, were paid into the Treasury. Another lot of cotton, consisting of fifty bales, which the claimants’ testator had sent to Mobile to be shipped on bis account, was seized by a Treasury agent and sold, and tbe net proceeds of which amounted to $1,430 39, and, together with tbe proceeds of the other lot, making an aggregate of $11,379 31.
The loyalty and adherence of B. Ogle Tayloe to the United States is fully proved by .such witnesses as General Schriver, Admiral Shubrick, and Judge Olin, wbo were bis associates and intimate acquaintances during tbe entire period of tbe *705 rebellion. His ownership is proved and not disputed, and it is clearly shown that the proceeds, to the amount named, are in the Treasury of the United States.
The counsel for the United States resists a recovery in this case— ,
1. Because Edward Thornton Tayloe, one of the executors who brings this suit, ivas disloyal to the United States and cannot maintain this action.
2. That there can be no recovery for the 57 bales which had been sold to the Confederate cotton agent.
Mr. Tayloe died since the seizure and sale of the cotton.
The proof showed that Edward T. Tayloe resided in the insur-rectionary territory during the entire rebellion, and in sentiment,and act was disloyal to the United-States.
The will of Mr. Tayloe shows that E. T. Tayloe is not entitled to any part of his personal estate, and that, in a division of such estate, this claim has been allotted to the widow and executrix of the testator.
In the case of Helen Atiberffs Administrator, (3 C. Cls. R., p. 84,) we decided that the title and loyalty of the owner were only in issue; and that where he died before suit, or while it was pending, we could not inquire into the loyalty of the distributees. So in Mim’s Case, (4 C. Cls. R., p. 521,) we held that the loyalty of .the distributees was not in issue; that the administrator sued merely in a representative capacity. It is like the case of outlawry in England. There the outlawry does not prevent the party from suing as executor. These decisions rule this case so far as the objection goes toE. T. Tayloe maintaining this suit as executor on account of his disloyalty.
And we do not find anything in the proofs to satisfy us .that either Morgan, the overseer, or the son, had any agency, or power or right, to dispose of the testator’s property to the Confederate government in any way. So far as the- evidence shows, it was without any authority from him, either express or implied, that the sale was made. And, so soon as informed of it, he promptly disapproved and disaffirmed the act.
W e render a judgment for claimants for the sum of $11,379 31.